LOUIS RICHARD HOSKING, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8360–71.   Filed August 19, 1974.

Louis Richard Hosking, pro se.
*Gerald W. Leland*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1968 in the amount of $2,023.15.[1]

The issues for decision are:

(1) Whether petitioner is entitled to compute his taxable income for the calendar year 1968 pursuant to the income averaging provisions of sections 1301–1305, I.R.C. 1954,[2] and

(2) If petitioner is entitled to use the income averaging provisions, whether he is entitled to a refund for any overpayment of tax for the calendar year 1968.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner was a resident of St. Paul, Minn., at the time of the filing of his petition in this case. He lodged with the Internal Revenue Service Center, Kansas City, Mo., an Internal Revenue Service Form 1040, "U.S. Individual Income Tax Return," dated March 16, 1969.

During the year 1968 petitioner was employed by Barton Contracting Co., Osseo, Minn., as a cost accountant and timekeeper. For that year petitioner was compensated for his services in the amount of $10,500.08, exclusive of any reimbursed or unreimbursed travel expenses from which the amount of $1,810.51 was withheld for Federal income tax.

Petitioner's taxable income for the calendar years 1964, 1965, 1966, 1967, and 1968 was in the amounts of $857.07, $1,918.06, $1,167.68, $4,152.77, and $8,900, respectively.

The only information shown on the Form 1040 lodged by petitioner with the Internal Revenue Service was his name, address, social security number, signature, the date of March 16, 1969, the figure of $128.40 on line 23 of the form, which stated, "If payments (line 21) are larger than tax (line 16), enter Overpayment" and on line 25 of the form, which stated, "Subtract line 24 from 23. Apply to: ☐ U.S. Savings Bonds, with excess refunded or ☒ Refund only," and a checkmark and the figure $128.40 in the "Refund only" column. Petitioner did not attach Internal Revenue Service Form Schedule G, "Income Averaging" to the Form 1040 which he filed for the taxable year 1968, nor did he check the box on line 12a of that form indicating that his tax was determined from Schedule G.

---

[1] In his deficiency notice respondent determined a statutory deficiency of $2,023.15 which he offset by tax withheld of $1,810.51, resulting in a deficiency in payment in the amount of $212.64.

[2] All references are to the Internal Revenue Code of 1954.

At the trial on October 1, 1973, petitioner affirmatively elected to use the income averaging provisions for the year 1968. Using the income averaging method based on his taxable income for the calendar years 1964 to 1968, inclusive, petitioner presented at the trial his mathematical computations of his tax for 1968 on an Internal Revenue Service Form Schedule G, "Income Averaging." His tax determined under this method was in the amount of $1,621.02 to which was added a tax surcharge of $121.58. Having had the amount of $1,810.51 withheld, petitioner determined he had overpaid his total tax liability of $1,742.60 by the amount of $67.91.

Respondent in his notice of deficiency dated September 14, 1971, explained that petitioner had taxable income in the amount of $10,500 from wages received during 1968 which was partly offset by the maximum allowable standard deduction of $1,000 and the personal exemption of $600, resulting in a net taxable income for 1968 of $8,900. The statutory deficiency based on this amount of taxable income was calculated to be in the amount of $2,023.15, no credit for tax withheld having been claimed on the return as filed. Respondent, however, in the deficiency notice showed an unclaimed prepayment credit for tax withheld in the amount of $1,810.51 and determined the deficiency in payment due by petitioner for the year 1968 to be $212.64. Respondent in the notice of deficiency further stated as follows:

If a petition to the United States Tax Court is filed against the deficiency proposed herein, the basis for the overpayment claimed on your return should be made a part of the petition to be considered by the Tax Court in any redetermination of your tax liability. If a petition is not filed, the claim for refund will be disallowed and official notice will be issued by certified mail in accordance with section 6532(a)(1) of the Internal Revenue Code.

In his petition to the Court, petitioner claimed that respondent had erroneously determined he was liable for the net deficiency of $212.64 and that he was entitled to a refund of $128.40.

OPINION

The first issue is whether petitioner is entitled to the benefits of computing his tax for 1968 by the income averaging method provided for in sections 1301 to 1305 inclusive. Respondent admits that a proper computation of petitioner's income for 1968 under these provisions results in a total tax for the year 1968 of $1,742.60 as compared to a tax of $2,023.15 computed without the benefit of these provisions. However, respondent contends that petitioner's election to use the income averaging provisions for 1968 made for the first time at the trial of this case was untimely. If we decide that petitioner's election was timely, the question arises whether we should find that petitioner would

be entitled to a refund of any resulting overpayment under the provisions of section 6512(b).

Section 1304(a)[3] provides that a taxpayer must choose to income-average and that such choice "may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax * * * for the taxable year." Section 1.1304–1, Income Tax Regs., provides:

Sec. 1.1304–1 Choice of income averaging by taxpayer.

(a) *Choice by taxpayer.* The income averaging provisions apply to a taxable year only if the taxpayer chooses to have the benefits of income averaging for such taxable year. The taxpayer shall signify his choice by making his return for the computation year on Form 1040 and attaching Schedule G, Income Averaging, thereto. The taxpayer may make or change his choice of such benefits at any time before the expiration of the period (including extensions thereof) prescribed in section 6511 for making a claim for credit or refund of the tax imposed by chapter 1 of the Code for such taxable year..

Respondent argues that petitioner, having made no return, is barred from making an election to income-average for the first time at the trial. He contends the period within which petitioner could have elected under section 1304(a) and section 6511(a)[4] prescribing the time for filing of a claim expired on April 15, 1971, 2 years after the withheld tax was deemed paid under section 6513 as the Form 1040 filed by petitioner for the year 1968 lacked the information necessary to constitute a "return" within the meaning of the Code, relying on *Commissioner* v. *Lane-Wells Co.*, 321 U.S. 219 (1944); *United States* v. *Porth*, 426 F. 2d 519 (C.A. 10, 1970).

While he has not favored us with a brief, petitioner apparently contends that to have disclosed the information required by Form 1040 would have constituted an unconstitutional invasion of his privacy and a violation of his rights under the fifth amendment against self-incrimination so that the Form 1040 he filed should be considered an adequate return and that his election to income-average which he made at trial of this case was effective.

---

[3] SEC. 1304. SPECIAL RULES.

(a) TAXPAYER MUST CHOOSE BENEFITS.—This part shall apply to the taxable year only if the taxpayer chooses to have the benefits of this part for such taxable year. Such choice may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for the taxable year.

[4] SEC. 6511. LIMITATIONS ON CREDIT OR REFUND.

(a) PERIOD OF LIMITATION ON FILING CLAIM.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

It is well settled that the requirement that taxpayers shall prepare and file their tax returns, as established by the Code and respondent's regulations thereunder, does not violate a taxpayer's privilege against self-incrimination under the fifth amendment. *United States* v. *Sullivan*, 274 U.S. 259 (1927); *Kasey* v. *Commissioner*, 457 F. 2d 369, 370 (C.A. 9, 1972), affirming 54 T.C. 1642 (1970). It is further well settled that the requirement of filing ordinary and reasonable returns and the inspection of returns under the limited circumstances as provided for under section 6103 do not violate a taxpayer's constitutional protection against unreasonable search and seizure under the fourth amendment. *Flint* v. *Stone Tracy Co.*, 220 U.S. 107 (1911); *Hubbard* v. *Mellon*, 5 F. 2d 764 (C.A.D.C. 1925). See also *Calif. Bankers Assn.* v. *Shultz*, 416 U.S. 21 (1974).

A return must contain sufficient data from which respondent can compute and assess the liability with respect to a particular tax of a taxpayer. *Commissioner* v. *Lane-Wells Co.*, 321 U.S. 219 (1944); *Marko Durovic*, 54 T.C. 1364, 1387–1388 (1970), affirmed on this issue and reversed and remanded in part 487 F. 2d 36 (C.A. 7, 1973). Petitioner here did not disclose in the Form 1040 that he filed for the year 1968 his gross income, elections, deductions, exemptions, net income, or credits for that year. His only disclosure other than his name, address, social security number, and date was that he had overpaid the amount of $128.40 which he desired refunded. This information falls far short of that necessary to be shown on a return to enable respondent to compute and assess petitioner's tax. *John H. Houston*, 38 T.C. 486, 491–492 (1962). Consequently the Form 1040 filed by petitioner did not constitute a return within the meaning of the Code. Not having filed a return, petitioner under section 6511 would be required to file any claim for refund of tax which was withheld from his wages within 2 years from the time the tax was paid, which under section 6513 (b)(1) was deemed to be on April 15, 1969. Petitioner's election at the trial was subsequent to April 15, 1971, 2 years after the payment of the withheld tax.

Since petitioner did not elect to use income averaging within 3 years after his return was filed, as he filed no return, or 2 years after the withheld tax was deemed paid, we must decide whether petitioner's otherwise proper election to income-average at the trial on October 1, 1973, is effective.

Initially it should be noted that the language of section 1304(a) is permissive and not mandatory. That section states that a taxpayer's choice to use income averaging *"may* be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for the taxable year." (Emphasis supplied.) The import of this permissive

language is to permit the election as long as it may result in a lesser tax since of course no overpayment of tax can be refunded unless the refund of such overpayment is not barred. It has long been settled that where a petition is filed with this Court from a proper notice of deficiency properly raising an issue, we have jurisdiction to redetermine the proper tax liability for the year involved even though a resulting overpayment is barred and even though the basis for our determination is an adjustment to the taxpayer's income other than those made in the notice of deficiency. *Roslyn Fuel Co.*, 16 B.T.A. 285, 296 (1929). In our view the intent of section 1304(a) was to allow the choice to income-average to be made for the first time before this Court. Section 1.1304–1, Income Tax Regs., repeats the "may" language of the statute merely adding a reference to extension of the period of limitation and specifying section 6511 as the provision governing the timeliness of claims. The incongruity of not so interpreting section 1304(a) is demonstrated by this case. Respondent determined a statutory deficiency in petitioner's income tax for 1968 of $2,023.15, of which $1,810.51 had been paid by withholding, leaving a deficiency in payment of $212.64. Petitioner could have paid the $212.64 after receiving the deficiency notice and then filed a petition with this Court seeking a redetermination of his tax (section 6213 (b)(3)). Under such circumstances he would have come within the precise language of section 1304(a) since the $212.64 would have been paid within less than 2 years before his petition was filed. In our view it was not intended by section 1304(a) to make a distinction between a taxpayer who elected to pay the deficiency determined after receipt of the notice of deficiency and then file a petition in this Court and one who elects not to pay the deficiency before filing his petition in this Court.

However, even if we had concluded that technically petitioner's election for income averaging was delayed beyond the period provided by the statute and regulations, it would not follow that we would hold the election invalid. There have been numerous cases in which a delayed election has been held to be a proper election. As we stated in *Albert L. Dougherty*, 60 T.C. 917, 940 (1973):

We distill from the decided cases that the critical question involved in determining the timeliness of a delayed election is whether "the original action (or the failure to act) on the part of the taxpayer did not amount to an election against, and was not inconsistent with, the position which the taxpayer ultimately did adopt." See *National Western Life Insurance Co.*, 54 T.C. at 38. Certainly, nothing done by the petitioner prior to his election in April of 1968 amounted to a disclaimer of the benefits of section 962 or was inconsistent with his later attempt to elect the benefits of that section. * * *

It is also significant to note that the instant case does not involve the kinds of difficulties inherent in other situations, where the granting of a right of late election permits the taxpayer in effect to play both ends against the middle as the result of hindsight. See *Riley Co.* v. *Commissioner*, 311 U.S. 55, 58–59 (1940) ; *Denman Tire & Rubber Co.* v. *Commissioner*, 192 F. 2d 261, 264–265 (C.A. 6, 1951) ; *Estate of George Stamos,* 55 T.C. at 473, 477. Here, no adjustment which can affect the petitioners' tax liability for another year is involved; the only import of the election appears to be the rate of tax to which petitioners will be subject on the amount included in their income for 1963 under section 951 (a)(1)(B). * * *

Under the facts of the instant case petitioner's actions have been entirely consistent. He claimed on the Form 1040 he filed that he had overpaid his tax. Although he made no explanation of this claim, such a claim is not inconsistent with a computation of petitioner's tax by income averaging. At no time has he disclaimed the benefits of income averaging. The delayed election which he ultimately and properly made at the trial of this case did not in any way subject respondent to a significant administrative disadvantage and respondent does not contend otherwise. Also, here as in the *Dougherty* case a later election under the circumstances would not permit petitioner to benefit from hindsight or require a readjustment of tax for any year other than the one involved herein.

Since neither section 1304(a) nor respondent's regulations thereunder specifically require that the benefits of income averaging are available only to a taxpayer who elects within the prescribed time limits and neither expressly denies the benefits of income averaging for a failure to elect within the permissible time period, in our view petitioner should not be denied the opportunity to correct his inadvertent error while the year involved is still open to adjustment. Under these circumstances we believe the following statement concerning the timeliness of a late election under section 453 in *John P. Reaver*, 42 T.C. 72, 81–82 (1964), is applicable:

Here, petitioners made an honest mistake and rectified it at the first opportunity. We discern no reason why petitioners' amended return for the year of sale, filed within the period for determining a deficiency for 1958 or for any year affected, should not be deemed to be compliance with the requirements of the regulations. Petitioners have never adopted any position inconsistent with that reflected in the amended return ; they have never represented that they were using any other method to account for their gain on the sale ; the entire receipts were included in income ; all the information required by the regulations was supplied in the amended return ; and respondent at no time could have been misled to his advantage.

See also *Columbia Iron & Metal Co.*, 61 T.C. 5 (1973).

Considering the above reasons, the legislative purpose [5] of the income averaging provisions, and the fact that neither the statute nor respondent's regulations make the submission of an election within the period for claiming a refund a sine qua non for the income averaging benefits or deny these benefits if the election is not within such time period, we conclude that the statute and regulations permit an election at the trial to be considered timely under the circumstances of this case.

Since petitioner's election was timely, he has overpaid his tax for 1968 as computed under the income averaging method. The remaining issue therefore is whether the facts here are such as to entitle petitioner to receive a refund of his overpayment for 1968.

Respondent contends that the record does not permit the finding necessary under section 6512(b)(2) to entitle petitioner to a refund of his overpayment. Section 6512(b)(2)[6] provides that no refund of an overpayment found by this Court shall be allowed unless we find that the tax was paid within the period specified in that section. Since we have concluded that no return was filed by petitioner within the period provided by section 6512(b)(2), in order for any overpayment

---

[5] H. Rept. No. 749, to accompany H.R. 8363 (P.L. 88–272), 88th Cong., 1st Sess., 1964–1 C.B. (Part 2) 234 :

(b) General reasons for provisions.—A general averaging provision is needed to accord those whose incomes fluctuate widely from year to year the same treatment accorded those with relatively stable incomes. Because the individual income tax rates are progressive, over a period of years those whose incomes vary widely from year to year pay substantially more in income taxes than others with a comparable amount of total income but spread evenly over the years involved. This occurs because the progressive rates take a much larger proportion of the income in taxes from those whose incomes in some years are relatively high. The absence of any general averaging device has worked particular hardships on professions or types of work where incomes tend to fluctuate. This is true, for example, in the case of authors, professional artists, actors, and athletes as well as farmers, fishermen, attorneys, architects, and others.

＊          ＊          ＊          ＊          ＊          ＊          ＊

Income averaging, in your committee's view, should be designed to treat everyone as nearly equally for tax purposes as possible, without regard to how their income is spread over a period of years and without regard to the type of income involved. At the same time, it is necessary to have any income averaging device in a form which is workable, both from the standpoint of the taxpayer and the Internal Revenue Service.

[6] SEC. 6512(b). OVERPAYMENT DETERMINED BY TAX COURT.—

(2) LIMIT ON AMOUNT OF CREDIT OR REFUND.—No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—

(A) after the mailing of the notice of deficiency,

(B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or

(C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency—

(i) which had not been disallowed before that date,

(ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or

(iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532.

to be refunded to petitioner we would have to find that the tax was paid (1) after the petition was filed, (2) within 2 years before the notice of deficiency was mailed, or (3) that a proper claim for refund was filed within 2 years after the tax was paid. There is nothing in this record to indicate that any tax was paid after the notice of deficiency was mailed. For purposes of section 6512 the tax was deemed paid under section 6513 (b) (1) on April 15, 1969, which was more than 2 years prior to the mailing of the deficiency notice in September 1971. Consequently, petitioner could not have filed a claim for refund when the deficiency notice was mailed in September 1971 as the applicable time for filing the claim had expired on April 15, 1971, which is 2 years after the withheld tax was deemed paid. Finally, unless the Form 1040 for 1968 that was deemed filed by petitioner on April 15, 1969, can be considered a claim for refund of any overpayment of tax based on income averaging, no claim for refund was filed within 2 years after payment of the tax. Section 301.6402–2 (b) (1), Proced. & Admin. Regs., provides as follows:

(b) *Ground set forth in claim.*—(1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. *The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.* The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit. [Emphasis supplied.]

Petitioner's Form 1040 made no reference to the right to income-average and failed to assert facts necessary to support such a claim as required by the above regulation. Since the Form 1040 does not recite the nature of the claim and the facts upon which it is founded, it did not constitute a claim for refund. *United States* v. *Felt & Tarrant Co.*, 283 U.S. 269 (1931); *Bear Valley Mutual Water Co.* v. *Riddell*, 493 F. 2d 948 (C.A. 9, 1974); *Stoller* v. *United States*, 444 F. 2d 1391 (C.A. 5, 1971); *Herrington* v. *United States*, 416 F. 2d 1029 (C.A. 10, 1969).

Since petitioner's refund claim on his Form 1040 did not constitute a claim setting forth any ground based on income averaging, petitioner's claim on that basis made at the trial could not be considered an amendment of any claim in the return. As we stated in *Barry-Wehmiller Machinery Co.*, 20 T.C. 705, 711–712 (1953):

We start, therefore, with neither a formal nor an informal claim for refund resulting from an unused excess profits credit carry-back, and unless there was such claim on or before October 15, 1948, the time limit prescribed by sec-

tion 322(b) (6), *supra*, for claiming a refund based on such a carry-back from the fiscal year 1945, the amended claim, so-called, filed on July 7, 1950, was a new claim and having been filed out of time, the respondent was without power to entertain and act upon it. *United States* v. *Andrews*, 302 U.S. 517; *United States* v. *Garbutt Oil Co.*, 302 U.S. 528.

There are cases which hold under certain circumstances that respondent has waived his formal requirements for filing a claim for refund. Respondent in his notice of deficiency in this case states that "If a petition is not filed, the claim for refund will be disallowed." However, in our view this recitation in the deficiency notice is not sufficient basis for concluding that respondent dispensed with his formal requirements and considered the merits of the claim under the particular facts involved here. See *Angelus Milling Co.* v. *Commissioner*, 325 U.S. 293 (1945); *Bear Valley Mutual Water Co.* v. *Riddell, supra; Anderson Co.* v. *United States*, 447 F. 2d 41, 48 fn. 17 (C.A. 7, 1971).

We conclude that petitioner's delayed election for income averaging was timely, but that petitioner's overpayment which results from the computation of tax under the income averaging method may not be refunded as we are unable to find the facts pursuant to section 6512 (b) (2) necessary to permit a refund of the overpayment.

*Decision will be entered under Rule 155.*