EDITH G. WHITE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9918–75.     Filed September 20, 1979.

---

Edith G. White, pro se.
*John S. Ball*, for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in petitioner's Federal income tax for the taxable years 1972 and 1973 in the amounts of $106 and $79, respectively. The issues for our decision are:

(1) Whether petitioner's receipt of Federal Reserve notes constituted taxable income to her;

(2) Whether substantially blank, unsigned returns filed by petitioner and her husband were valid joint returns for purposes of section 6011(a);[1]

(3) Whether an overpayment may be credited or refunded under section 6512(b) where petitioner failed to file a return and paid the tax more than 2 years prior to the mailing of the statutory notice of deficiency;

(4) Whether a statutory notice of deficiency, approved and signed by respondent's agent, was valid; and

(5) Whether petitioner is entitled to recover a 50-percent criminal penalty against respondent pursuant to section 7214.

### FINDINGS OF FACT

Petitioner Edith G. White (petitioner) is a married individual who resided in Roseland, Va., at the time the petition was filed herein. For the taxable years in issue, petitioner and her husband filed, under protest, unsigned Federal tax return forms with the Internal Revenue Service Center, Memphis, Tenn. Said forms contained only the names, address, and social security numbers of petitioner and her husband.

Several documents were attached to the returns which set forth, in exhaustive detail, the position of petitioner and her husband to the effect that they had received no taxable income

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

during the years in issue because they considered Federal Reserve notes to be fraudulent, larcenous, unconstitutional, and of no legal value. During the taxable year 1972, petitioner and her husband filed a joint declaration of estimated tax and in connection therewith made estimated income tax payments of $650.25.

On August 14, 1975, respondent mailed a statutory notice of deficiency to petitioner. The acting chief of respondent's review staff signed the District Director's name to the statutory notice under an authorization executed on August 11, 1975. The 1972 estimated tax credit was not shown on the statutory notice of deficiency. On September 17, 1975, petitioner and her husband filed a claim for refund for the taxable year 1972 in the amount of the estimated tax paid for that year of $650.25.

Respondent did not act on the refund claim but instead determined that since petitioner received dividend income she was required to file valid Federal income tax returns for the taxable years 1972 and 1973. He computed the deficiencies for the taxable years by using the tax tables applicable to a married person filing a separate return with a low income allowance.

## OPINION

As to the first issue, it is petitioner's contention that the Federal Reserve notes which she received do not constitute income in that they are devoid of intrinsic value because they cannot be redeemed in gold. Thus, she concludes that having received no income she is not required to file a return.

Petitioner's argument against the Federal Reserve and monetary system of the United States is clearly frivolous. We have uniformly held, on numerous occasions, that Federal Reserve notes constitute legal tender which must be reported on a taxpayer's Federal income tax return in accordance with his method of accounting. *Hatfield v. Commissioner*, 68 T.C. 895 (1977); *Gajewski v. Commissioner*, 67 T.C. 181 (1976), affd. in an unpublished opinion (8th Cir., May 2, 1978); *Cupp v. Commissioner*, 65 T.C. 68 (1975), affd. in an unpublished opinion (3d Cir., June 10, 1977); see also *United States v. Daly*, 481 F.2d 28 (8th Cir. 1973), cert. denied 414 U.S. 1064 (1973); *United States v. Porth*, 426 F.2d 519 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970).

Petitioner also argues that a dollar lacks monetary value

because paper currency cannot be converted into gold. Petitioner ignores the fact that the Gold Reserve Act of 1934[2] heralded the end of the gold standard in this country. This act notwithstanding, petitioner's argument lacks any merit since we have held that the statutory gold content of the dollar is irrelevant for purposes of computing taxable income. *Cupp v. Commissioner, supra* at 80–81; see also *Gajewski v. Commissioner, supra* at 194–195. Therefore, we adhere to these decisions and reject petitioner's arguments.

Regarding the second issue, petitioner falls squarely within section 6011, which provides:

(a) GENERAL RULE.—When required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title, or for the collection thereof, *shall make a return or statement according to the forms and regulations prescribed by the Secretary. Every person required to make a return or statement shall include therein the information required by such forms or regulations.* [Emphasis supplied.]

Under the regulations to that section, respondent prescribes, inter alia, the following guidelines on preparing a return at section 1.6011–1(b), Proced. & Admin. Regs.: "Each taxpayer should carefully prepare his return and set forth fully and clearly the information required to be included therein. Returns which have not been so prepared will not be accepted as meeting the requirements of the Code."

We believe that the directive set out at section 1.6011–1(b) is clear. From the facts in this record, it appears that petitioner has willfully refused to file income tax returns in substantial compliance with respondent's regulation. The acid test for determining whether a document constitutes a valid tax return is whether it contains sufficient data from which respondent can compute and assess a tax liability. *Commissioner v. Lane-Wells Co.,* 321 U.S. 219 (1944); *Durovic v. Commissioner,* 54 T.C. 1364, 1387–1388 (1970), affd. on this issue and revd. and remanded in part on other issues 487 F.2d 36 (7th Cir. 1973).

Petitioner and her husband did not disclose, in the Forms 1040 that they filed for the taxable years 1972 and 1973, their gross income, deductions, exemptions, taxable income, or credits for these years. The only items disclosed on these return forms were

---

[2] 48 Stat. 337, 31 U.S.C. secs. 392 and 408(a) (1976).

their names, address, and social security numbers. This information falls far short of that necessary to be shown on a return to enable the computation of petitioner's tax by respondent. *Houston v. Commissioner*, 38 T.C. 486, 491–492 (1962). Consequently, the Forms 1040 filed by petitioner did not constitute valid returns within the meaning of section 6011.

There is another fatal defect in the forms as filed by petitioner. Her signature fails to appear on either the Forms 1040 or on any of the many documents attached thereto. To file a valid return, petitioner must sign and verify her returns under penalties of perjury. *Vaira v. Commissioner*, 52 T.C. 986, 1005 (1969); *Plunkett v. Commissioner*, 41 B.T.A. 700, 710–711 (1940), affd. 118 F.2d 644 (1st Cir. 1941).

Petitioner further contends that her Fifth and Fourth Amendment rights were violated by the requirement that she file a return reporting her income to respondent. The law is well settled that the requirement that taxpayers file tax returns in accordance with the provisions of the Internal Revenue Code and respondent's regulations does not violate a taxpayer's privilege against self-incrimination under the Fifth Amendment. *Cupp v. Commissioner* 65 T.C. at 79; *Hosking v. Commissioner*, 62 T.C. 635, 639 (1974); see also *United States v. Sullivan*, 274 U.S. 259 (1927); *United States v. Daly*, 481 F.2d 28 (8th Cir. 1973); *United States v. Porth*, 426 F.2d 519 (10th Cir. 1970). It is further well settled that the requirement for filing ordinary and reasonable returns and respondent's inspection thereof, does not violate a taxpayer's protection against unreasonable search and seizure under the Fourth Amendment. *Flint v. Stone Tracy Co.*, 220 U.S. 107 (1911); *Hosking v. Commissioner, supra* at 639.

We find no merit to any of these contentions of petitioner and therefore conclude that since petitioner filed return forms that disclosed no data from which respondent could compute and assess her tax liability, and did not sign the documents which petitioner claimed to be returns for the years 1972 and 1973, they do not constitute valid returns.

With respect to the third issue, petitioner seeks recovery of the entire sum paid as an estimated tax payment during 1972. Respondent is required to compute any deficiency owed by petitioner without regard to payments on account of estimated tax pursuant to section 6211(b)(1). The deficiency in the instant case is the amount of tax for the respective years of 1972 and

1973, since no return has been filed by petitioner for either year. Sec. 301.6211–1(a), Proced. & Admin. Regs.

Petitioner contends that respondent has "confiscated" her 1972 estimated tax payment in the amount of $650.25 by the specious application of the period of limitations set out at section 6511. It is respondent's position, first raised in his amended answer, that any overpayment which may be determined for the 1972 taxable year cannot be refunded or credited to petitioner due to restrictions contained in sections 6511 and 6512. Thus, respondent argues that any alleged overpayment of income tax for 1972 is barred by the statute of limitations. Respondent bears the burden of proof on this issue. Rule 142(a), Tax Court Rules of Practice and Procedure.

Section 6511(a)[3] provides, inter alia, that a claim for credit or refund of an overpayment of tax must be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever period expires the later. In the case where no return was filed by the taxpayer, then the period of limitations for filing a refund claim is within 2 years from the time the tax was paid. Not having filed a return for either 1972 or 1973, petitioner under section 6511 would be required to file any claim for refund of tax within 2 years from the time the tax was paid, which under section 6513(b)(2) was deemed to be on April 15, 1973.

In the instant case, petitioner filed a "petition to enforce petitioners' [sic] claim for refund from respondent," subsequent to her refund claim of September 17, 1975. Under section 6512(b)(1), if this Court finds that there is no deficiency and there is an overpayment, or that there is a deficiency and an overpayment, it has the requisite jurisdiction to determine such overpayment. Petitioner disregards section 6512 completely, arguing instead that the applicable limitations period under section 6511(a) is 3 years from the date of filing the return, which we have found to be irrelevant in view of petitioner's

---

[3]SEC. 6511. LIMITATIONS ON CREDIT OR REFUND.

(a) PERIOD OF LIMITATION ON FILING CLAIM.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

failure to file a return. Consequently, if petitioner is to receive a credit or refund of the amount paid in 1972, she must come within the provisions of section 6512.

Under section 6512(b)(2),[4] certain limits are placed upon the amount of credit or refund. Generally, the provisions of that section dictate that where this Court finds an overpayment, the applicable limit on the amount of the credit or refund is the aggregate of the sum paid after the mailing of the statutory notice of deficiency and the sum paid before the mailing of the statutory notice of deficiency where a valid refund claim could have been filed on the date of such mailing.

Of the disjunctive provisions under section 6512(b)(2), neither section 6512(b)(2)(A) nor section 6512(b)(2)(C) apply in the instant case because petitioner failed to pay the tax after, or file a refund claim before, the date on which the statutory notice of deficiency was mailed. However, section 6512(b)(2)(B) requires this Court to determine whether the alleged overpayment is to be credited or refunded, provided the limitations period of section 6511(b)(2)(B) is satisfied.

In this case, petitioner is deemed to have paid the estimated tax on April 15, 1973. She received a statutory notice of deficiency on August 14, 1975, and filed her claim for refund on September 17, 1975. Since the period to file a timely refund claim under section 6511 expired on April 15, 1975 (2 years from the time the tax was paid), and petitioner could not have filed a timely claim for refund upon receipt of her statutory notice of deficiency on August 14, 1975, section 6512(b)(2)(B) requires that no credit or refund be allowed petitioner. See also *Hosking v. Commissioner*, 62 T.C. 635, 639–644 (1974). We must conclude,

---

[4]SEC. 6512(b). OVERPAYMENT DETERMINED BY TAX COURT.—

(2) LIMIT ON AMOUNT OF CREDIT OR REFUND.—No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—

    (A) after the mailing of the notice of deficiency,

    (B) within the period which would be applicable under section 6511(b)(2), (c), (d), or (g), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment; or

    (C) within the period which would be applicable under section 6511(b)(2), (c), (d), or (g), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency—

        (i) which had not been disallowed before that date,

        (ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or

        (iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532.

therefore, that petitioner is barred from recovering the estimated tax paid in the taxable year 1972 as we are unable to find the facts pursuant to section 6512(b)(2) necessary to permit a refund of the overpayment.

Our result does not mean, however, that petitioner is required to pay an additional $106 for the taxable year 1972. While respondent failed to explicitly state, either at trial or on brief, that petitioner was entitled to credit the estimated tax payments of $650.25 against the $106 deficiency, nevertheless, it is abundantly clear that she has such right.

An historical survey of the common law supports the conclusion that expiration of the limitations period merely extinguishes the remedy and not the right of the party thereunder to obtain setoff. See, e.g., 1 A.L.R. 2d 630 (1948). We are not here dealing with setoff of one account against another, but with a credit within one account, and the equitable and moral nature of petitioner's claim to such a credit cannot be disregarded. While respondent has typically broad discretion in administrative matters involving credits or refunds under section 6402, he does not have the authority to blatantly disregard a taxpayer's prior payment and seek payment of the same amount under the guise of the bar established by section 6511.

In further support of petitioner's right to such credit is respondent's own regulation. Section 301.6215–1, Proced. & Admin. Regs., provides:

Where a petition has been filed with the Tax Court, the entire amount redetermined as the deficiency by the decision of the Tax Court which has become final shall be assessed by the district director or the director of the regional service center and the *unpaid* portion of the amount so assessed shall be paid by the taxpayer upon notice and demand therefor. [Emphasis supplied.]

This regulation makes it clear that the term "deficiency" is not equivalent to "liability" since only the unpaid portion of the assessed amount is a liability payable by petitioner. It is true that the statute of limitations for claiming refunds of overpayments for 1972 has expired, but there is no comparable limitations statute regarding payments of estimated income tax. Section 6315 provides that such payments "shall be considered payment on account of the income taxes imposed by subtitle A *for the taxable year.*" (Emphasis supplied.) Overpayments constitute the excess of payments over actual tax liability. Since petitioner's actual tax liability for 1972 amounts to $106 and she

paid $650.25, no unpaid tax liability remains to be assessed by respondent for that taxable year.[5]

The remaining $544.25 is neither refundable to petitioner nor, under the express provision of section 6315 which is emphasized above, is it creditable against petitioner's 1973 tax deficiency. Section 6402 empowers respondent to make credits or refunds, within the applicable period of limitations, for any tax owed by a taxpayer. Thus, a 1972 overpayment can be credited against a 1973 deficiency, provided the relevant limitations period has not expired. In the instant case, the expiration of the limitations period for refund claims negates the possibility of refund in 1972 and, similarly, precludes the credit in 1973. See sec. 301.6402–1, Proced. & Admin. Regs.

As to the fourth issue, petitioner contends that the acting chief of respondent's review staff forged respondent's signature on the statutory notice of deficiency sent petitioner. We find this contention sophomoric. It is clear from the facts hereunder that the acting chief of respondent's review staff had the requisite delegated authority. To adopt petitioner's reasoning would require respondent to sign each and every statutory notice that he issued. This result would be administratively unworkable and grossly inefficient.

We note that a notice of deficiency has been found valid despite the fact that it lacked a signature. *Commissioner v. Oswego Falls Corp.*, 71 F.2d 673 (2d Cir. 1934), affg. 26 B.T.A. 60 (1932). A validly delegated authority to sign respondent's name to a statutory notice of deficiency, a fortiori, results in our holding, as we have in the past, that the statutory notice hereunder was validly issued. *Wessel v. Commissioner*, 65 T.C. 273 (1975); *Pendola v. Commissioner*, 50 T.C. 509 (1968); *Perlmutter v. Commissioner*, 44 T.C. 382 (1965), affd. 373 F.2d 45 (10th Cir. 1967).

As to the fifth issue, petitioner raises the argument that she is entitled to recover a 50-percent criminal penalty against respondent pursuant to section 7214. We find this argument to be completely incredible. Had petitioner merely read section 7214 (a

---

[5]To the same effect, see *Baral v. Commissioner*, T.C. Memo. 1978–383, wherein a taxpayer who first filed his 1969 tax return in 1975 could not claim a refund for excess withholding amounts because he was barred by the statute of limitations for refund claims under sec. 6511. However, we found that the excess withholdings were effective as a credit against the actual current tax liability imposed by the deficiency.

copy of which was attached to her petition), she would have discovered that it applies in criminal proceedings for taxpayers who occupy the role of informers. Moreover, we must also deny petitioner's request that we order respondent to pay the legal costs of this action. This Court has held that we are not authorized by the provisions of the Civil Rights Attorneys' Fees Award Act to make an allowance of attorney fees to a petitioner. *Key Buick Co. v. Commissioner,* 68 T.C. 178 (1977). We therefore find that respondent is not liable for any criminal penalties or costs in the instant case.

One concluding point should be made. That is, when frivolous cases such as the one at hand are brought to court, there is the very real question as to whether damages should be imposed under section 6673.[6] Unlike some of our European neighbors, the American tax collection system is based upon self-assessment. When the average taxpayer refuses to pay his fair share of the tax burden, the entire collection system is placed in jeopardy. As we stated in *Hatfield v. Commissioner,* 68 T.C. 895, 899 (1977):

> Many citizens dislike paying their fair share of taxes; everyone feels that he or she needs the money more than the Government. On the other hand, as Justice Oliver Wendell Holmes so eloquently stated: "Taxes are what we pay for civilized society." *Compania de Tabacos v. Collector,* 275 U.S. 87, 100 (1927). The greatness of our nation is in no small part due to the willingness of our citizens to honestly and fairly participate in our tax collection system which depends upon self-assessment. *Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination; but that does not mean that a citizen may resort to the courts merely to vent his or her anger and attempt symbolically to throw a wrench at the system. Access to the courts depends upon a real and actual wrong—not an imagined wrong—which is susceptible of judicial resolution.* General grievances against the policies of the Government, or against the tax system as a whole, are not the types of controversies to be resolved in the courts; Congress is the appropriate body to which such matters should be referred. [Emphasis supplied.]

While we have decided not to impose such damages in this case, nevertheless, this should be fair warning to future tax

---

[6]SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT MERELY FOR DELAY.

Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.

protesters who persist in bringing frivolous cases merely for purposes of delay. This Court has already imposed damages of $500 under section 6673 in one such case and will not be hesitant to do the same in future cases. See *Wilkinson v. Commissioner*, 71 T.C. 633, 639–643 (1979).

> *Decision will be entered for the respondent, with a credit on account of petitioner's 1972 estimated income tax payments against respondent's determined deficiency for 1972.*